The first case for argument is United States v. Maloid, and that is docket number 21-1422. And we're ready, ready for argument. Good morning, Mr. Pincus. Good morning, Your Honor. May it please the Court. My name is Howard Pincus from the Federal Public Defender, and I represent Quindell Maloid. Mr. Maloid's Colorado conviction for conspiracy to commit felony menacing was wrongly counted as a crime of violence under the Elements Clause of 4B1.2. Could you pull the microphone down just a little bit? Sure. Right in front of you. A conspiracy does not require any force, and because the Elements Clause is not genuinely ambiguous, Application Note 1 of that guideline, which provides that conspiracies to commit crimes of violence are themselves crimes of violence, cannot be used. Even if it could, the Colorado conspiracy still would not qualify as a crime of violence because Colorado conspiracy is not generic conspiracy. This Court should vacate Mr. Maloid's sentence and remand him to the District Court to resentence him using the range of 30 to 37 months that applies without the crime of violence enhancement. Counsel, could I get you to speak to the generic conspiracy first? Sure. And why that isn't somehow invited error or maybe that argument has been waived? Well, it's not invited error because we never expressly took the position that it's the time of the present time that counts, although we did submit materials that suggested that. But that's not what prompted the Court to rule. It didn't induce the Court to rule against us because the primary reason is the survey that we submitted there yields essentially the same determination that the survey at the time that the provision was enacted yields. In the District Court, we said it was 21 to 18 in our favor. The government equivalent said there might be three that go the other way. At best, a tie, essentially a tie. Here, we're saying 16 to 14 in our favor. What the District Court did was just say I'm ruling for the reasons the government said. I think the government's right. It gave no indication that it gave any independent analysis of the survey. And it was primarily relying on the modern trend claim, I think, of what the government asserted. And that's given. Well, let me just start you. Sure. The doctrine of invited error has a causal component? Correct. In your view. Yes. It has to induce the District Court to do something. And our position didn't induce the District Court to do something. And it's clear now that the – well, it's clear that what matters is at the time of the enactment of the provision. That's what Taylor did. That's what stit the Supreme Court case, how it characterized Taylor. And that's what Ibarra v. Holder from this court made clear. We did say that Martinez-Cruz didn't address the timing issue. It actually does say it's at the time of – it's at the current time. But it was only doing that to contrast the common law view and said, no, it's a contemporary modern – contemporary generic meaning. And that's just the language of Taylor. And Taylor, stit, and Ibarra made clear that what matters is the time of enactment. That's what we're getting at. What was understood to have been at the time that the provision was enacted. And here we have the 16 to 14 split. And the 16 states are home to more than half of the entire country's population at the time the provision was adopted. Also home to 65 percent – about 65 percent of the 30 states whose position can fairly be determined. Against that, all we have is the Lefebvre Treatise. We also have the federal conspiracy, I should note, that requires a bilateral agreement. And not just a unilateral agreement where you can agree to commit to a conspiracy with somebody who doesn't share the criminal intent. That's the main issue. Unilateral or bilateral. So 16 states, bilateral. The federal government, bilateral. We have Lefebvre having a different characterization, but he bases it on just language of agreeing with another person rather than agreement. And expressly notes that courts in various states – courts don't necessarily treat that language as requiring a unilateral conspiracy. He cites Illinois with an E.G. citation. There's four other states that clearly didn't. And Vermont also read that language as requiring bilateral, at least in the context of an undercover conspiracy with an undercover agent, which is the classic unilateral, bilateral disagreement area. So we have Lefebvre, which on its face can't be trusted. And we have the Modic Penal Code, which says – was published in 1962, was not stating what the law is, but what it hoped the law would become, and by 1989 hadn't become that. So we have a majority of the states at the time of enactment whose position can fairly be determined requiring a bilateral conspiracy. We have the federal government also for general conspiracy requiring a bilateral agreement. And there's nothing that shows that majority rule was unilateral, which would be necessary for the government to obtain the benefit of the enhancement. Mr. Pincus, what do you say the numbers are if we look at the time of sentencing or the time of the crime, the federal crime? I didn't look at the time of the crime. I know what our position was in the district court about the time of sentencing. What are those numbers? I'm sorry? What are those numbers? We represented it was 21 to 18. The government said there's three more that they say should be characterized as unilateral, so 21-21 and essentially a tie. But it doesn't matter because what matters is the time of the enactment of the provision, as this court made clear in Ibarra, as the Supreme Court made clear in Taylor and in Stitt, interpreting Taylor. So regardless of what the breakdown is at the time of sentencing, what matters is what was, what provision, what meaning did it have generically at the time the provision was enacted. The generic nature of it doesn't change over time. The commission enacted something. It had a generic meaning. It doesn't vary depending on what later, what states later do. Let me ask you this on a different aspect of this, and this is what's bothering me. If 2K2.1 in the commentary says crime of violence meaning is 4B1.2A and application note. Now there's no claim that we can't look at the application note on 2K2.1, and the commentary is very important we're told. Why doesn't that just make the determination? It mandates that the reference to 4B1.2 and you should go to the application note. Regardless of whether or not that guideline is ambiguous. Well that goes to the Stinson argument because of course if the, if conspiracy can be used here under that application note, it still has to be generic conspiracy. So turning to the Stinson argument. I understand that, but we can use the commentary to 4B1.2 according to that referral from 2K2.1. Not according to this court's decision in Martinez, which was also a 2K2.1 case. And this court didn't look to the commentary, didn't say oh because 2K2.1 directs us to the commentary as well as the application note, I mean as well as the guideline, that that ends the matter. Instead it said how do we, is, can the application note be used given 4B1.2's guideline text for the enumerated offense clause. It looked to whether those two could be reconciled. So in Martinez this court took a position. But in Martinez it didn't need to go to the commentary, correct? No, it didn't need to go to the commentary. It was the same argument. But you said it didn't need to go, it didn't go to the commentary even though it needed to, is that what you're saying? What I'm saying is it didn't say that 2K2.1's reference to application note 1 and 4B1.2 ended the matter. What it looked to was is that commentary a permissible interpretation of the enumerated offense clause. But the fact remains it did go to the commentary. It did, but it tested the commentary. And should we do so here following the direction of 2K2.1A? Well, but the point is this Court of Martinez tested the commentary for consistency with the enumerated offense clause of 4B1.2. It would still look to 4B1.2 and said is the commentary to 4B1.2 a permissible interpretation of the guideline definition of crime of violence under the enumerated offense clause? So it took the same position we did here and that the Sixth Circuit took in Habeas where it said if we just viewed the reference from 2K2.1's commentary to 4B1.2's commentary, we would be applying commentary on commentary and that has an even more tenuous connection to the guideline. And there's also the fact that when that commentary note was initially 2K2.1, when it initially said just look to 4B1.2A for the crime of violence definition and 4B1.2B for control substantive and for prior felony convictions, look to an application note. The clear import of it is it was just trying to sweep in what 4B1.2 said about crime of violence. There's no suggestion that it meant for there to be a different interpretation of crime of violence for purposes of 2K2.1 and 4B1.2. And, in fact, it wouldn't make any sense as the Third Circuit pointed out in the DARE. Those two provisions are meant to have the same function. They increase sentences based on a prior conviction. Are you referring to a brew? I may have perhaps—  The Third Circuit, I'm sorry. Yes. I apologize. Yes. So the important point here for the Stintz analysis is that— Before you leave a brew. Sure. Now, what was the basis? How did they get to where you want us to get? It seemed to me that it was just kind of a statement. There wasn't a reasoning behind it. A brew was a little bit different in the sense that it was saying there's no definition in 2K2.1. So is there— How do we view that? Do we look to the consistency with 4B1.2 or do we— If that definition is ambiguous or unambiguous, what do we do? Do we give it the same treatment or not? Here we did say go to 2K2.1. 2K2.1 directs us to 4B1.2, so our position is a little bit different. But the point is that there's no reason to treat the two terms differently in the two different guidelines and no suggestion that the Sentencing Commission intended to do so. Turning to the Kaiser point, in Stinson, the Supreme Court said that commentary must be treated as an agency's interpretation of its own legislative rule, and that's why it applied Seminole Rock, the standard for deference to such rules. And Kaiser v. Wilkie has made clear that there can be no Seminole Rock or our deference unless the legislative rule is genuinely ambiguous. This applies just as much to Seminole Rock in the guidelines context as in any other context. The en banc Third Circuit agrees, as does the Sixth Circuit. As of yesterday, the en banc Eleventh Circuit in United States v. Dupree, which is 2023 Westlaw 227633, and I'll submit a 28-J on that. It's also the position the Solicitor General has taken in the Supreme Court in opposing certiorari in Moses from the Fourth Circuit. As she explained there, Kaiser sets forth the authoritative standard for determining whether particular commentary is entitled to deference. So Seminole Rock deference that is at the heart of Stinson deference requires first that there be genuine ambiguity. Kaiser makes that clear. The elements clause would have to be genuinely ambiguous for there to be any deference to the application note, and it's not. There's nothing ambiguous about a provision that an offense must have as an element, the use of force, attempted use of force, or threatened use of force. Stepping back in time just a little bit, was the note one and the attempts and the conspiracy and so forth, was that genuinely ambiguous when there was a residual clause? Well, that's under a different provision. That's the enumerated offense clause, and that's the position of – I mean, the residual clause itself may have some ambiguity, and we know that the residual clause was actually vague, but Martinez – and that was the issue in Martinez, but that's dealing with a very different matter, and what the court did in Martinez is also very different. It looked to can we reconcile the two, put them side by side, and said is there any way that we can read these two consistently? It didn't ask the threshold question, which Kaiser demands in Seminole Rock cases, of is the guidelines or the regulation, and the guidelines are the equivalent of legislative rules, is it genuinely ambiguous, and it's not here. So we'd ask the court to vacate Mr. Molloy's sentence or abandon it. Before you leave us, refreshing my memory, you have a brew. Are there any cases that are contrary to the brew approach that specifically deal with this particular guideline referral from 2K2.1 to 4B1.2 that are against you, authorities from other circuits? In terms of that specific issue of the application, I'm not – I can't think of any off the top of my head. You said the brew was a little bit different. So you're not suggesting that if we rule against your client that we've created a circuit split? I don't think with a brew, I think what you've done is not follow Martinez, which is an even more problematic issue, because Martinez doesn't view the 2K2.1 reference as dispositive. It instead asks, is the application note a permissible interpretation of 4B1.2, application 01, is it a permissible interpretation of 4B1.2's enumerated crime of violence? Although the district court thought that its ruling was consistent with Martinez, correct? It did. It was wrong. Okay. I understand. Thank you. Thank you. Good morning, Your Honors. Michael Johnson for the United States. We submit this court should affirm, based on the fact that both points that Mr. Malloy raises don't demonstrate that the district court erred. As to point one, Mr. Malloy invited the error. Even if this court does not find invited error, then under the plain error standard of review, there is no plain error here. Even under the new analysis that Mr. Malloy has conducted that he sets forth in his reply, there's a 16-14 split, 16 in favor of bilateral, 14 in favor of unilateral, and 20 states that are unaccounted for. That doesn't show plainness. Well, you say 20 states are unaccounted for. All those 20 states have conspiracy statutes, don't they? Yes. It's just that they haven't been interpreted, is that correct? Yes. As of 19- Can't we go to the statute itself and look ourselves to see if it appears it's unilateral or bilateral? Yes, Your Honor. And the government did that in its answer brief, and we came up with a different number based on- This is a 21-21 tie. I think we had 19 in favor of the unilateral approach, which outweighed the bilateral approach, which we set forth in our answer brief. 19 of the 20 that have not spoken in their courts. Is that what you're saying? In the answer brief, the government did look at those to try to determine if there's a way to identify whether the legislative language itself indicated bilateral versus unilateral, and we weren't able to in the answer brief. So our answer brief was based on an analysis. You mean you look at the statute- Yes. And you can't tell whether it's bilateral or unilateral? By looking at the statutory language, which is what I did for purposes of the answer brief. It wasn't clear to me as to some of the states. Was it clear to you on some of the 20 states whether it was unilateral or bilateral? Yes. And so we came up with a different number than- Okay. Of those 20 states, eliminating the ones that you couldn't figure out, what's the breakdown between unilateral and bilateral in your study? I believe we had 19 in favor of unilateral and 13 in favor of bilateral. I believe that's what we stated in our answer brief. We're talking about 20 states you say that there was no rule. And you say of those 20, you have to set some aside because you can't tell. So I don't know what the number is left, 10, 15. How many of those, lesser number of the 20, what's the breakdown on the count there? We were not able to determine the legislative language as to 18 of the states, I believe. That's what's in our answer brief. Okay. So of the 20, 18 you can't decide. Yes. So there's two left. What happens there? Our analysis indicated that of those two, we counted 19 total that were unilateral and 13 that were bilateral, which came up to 32. Just get me to the two that you looked at the statute only because there was no judicial decision. And you could tell whether it was unilateral or bilateral. What's the breakdown between those two remaining states? I don't have the, I don't recall exactly which states those are, Your Honor. Just the numbers. I don't care who they are. I'm not sure I understand the court's question. We have, I apologize. We looked at the legislative language. You say in looking at the time of sentencing that your count is, it's 21, 21, correct? We looked at the period of time as of 1989. We argued that assuming that Mr. Malloy is correct, that this court should look at this state of the law in 1989, that even under that analysis, that there were 19 states that were unilateral, which outweighed the number of states that were bilateral. So we assume for purposes of argument. 19 to what? What's the score here? I believe it's 19 to 13, Your Honor. I believe that's what's in our answer brief. Okay. Now at that time, these other 20 states had statutes, right? Yes. And you looked at those? Yes. And 18 of those you couldn't figure out what it was? Correct. Of the two that are left, were they unilateral or were they bilateral? I believe they were unilateral, Your Honor, because the number increased after looking at the legislative language. The number of unilateral states increased. So two states were added to the unilateral category. So that's a score for the defendant, correct? Well, the court, the district court ruled that the unilateral approach was proper, and Mr. Malloy is arguing that the court should have ruled that the bilateral approach is the proper way of analyzing it. So my understanding is that our larger argument is that – Go ahead on another point. I don't want to consume all your time on this. I'm sorry. Our larger point is that the numbers are so close that it can't indicate an error that is plain. There are a number of states, both sides are unable to determine whether the approach is unilateral or bilateral. Even under Mr. Malloy's analysis, page 12 of his reply, he comes up with a 16-14 split, 16 in favor of the bilateral approach and 14 in favor of the unilateral. We submit that that can hardly be called an error that is plain. That's not what plainness means. And if I could quickly just highlight my arguments as to point to. My point to your argument, Your Honor, is that, Your Honors, this court's decision in Martinez is controlling. The only way that Mr. Malloy can win on point two is if this court overrules Martinez. Even if this court determines that Martinez is not controlling, this court should apply Kaiser, and Kaiser shows the application note to 2K2.1 is valid, that 2K2.1 is absolutely ambiguous, and it's proper for the district court to look at that and to determine that, consistent with the guidelines, that the court could look to 4B1.2 and also the application note to 4B1.2. Well, help me understand the ambiguity that you see. What hole is being filled? Well, the district court, consistent with the guidelines recommendation and the guidelines provisions, followed the guidelines, and 2K2.1 says to look at application note one to 4B1.2 and 4B1.2 itself. There are multiple definitions of crime of violence in the guidelines, and the guidelines provides that if the same term is used in several different guidelines sections, the commentary for each guideline provision can indicate a different definition for that term. And here we have a different definition for crime of violence in various guidelines provisions. For example, section 2A4.1, comment note one provides a particular definition. Note two of 2L1.2 provides a particular definition that is different. 2S1.1, note one to 2S1.1 also provides a different definition. I understand that there are different definitions, but I guess what is the, just precisely, where is the ambiguity that you want to fill? Without a reference to, in 2K2.1, there is an explicit reference to 4B1.2 and application note to that guideline. Without that reference, there is no meaning or no definition or no understanding of crime of violence. So 2K2.1 becomes a meaningless guideline provision because there is no way to determine what crime of violence means or how it should be applied. And this is particularly important given that the guidelines have various definitions for crime of violence. So without a direction to a particular guideline provision to provide guidance, then there would be no way to determine what the term means. And so that is our essential, essentially that is why we submit that 2K2.1 is ambiguous. And therefore, it's proper for the court to look to 4B1.2 and the application note to 4B1.2. We note that as to the issue of plain error on 0.1 as well, this court in Martinez-Cruz does indicate that it applied the current period of time in analyzing the 50-state survey in assessing whether the generic definition of conspiracy was a bilateral or unilateral. That provides some support for our argument that the error here was not plain. And in addition to what the government mentioned a moment ago, which is that the split between the two states even under Mr. Malloy's analysis is so close that there could not be an error here that's plain as to 0.1. Could I get you to address the invited error point? Yes. Mr. Malloy specifically asked the district court to apply the current status of the law in determining the generic conspiracy. And Mr. Malloy, counsel from Mr. Malloy said that a moment ago. Well, he says that there's no causal connection, though, between that argument and what the district court actually did. Can you address that? The district court followed Mr. Malloy's recommendation and applied and looked at the survey that he had provided and based on that survey determined that the unilateral approach was the generic definition of conspiracy. That's what the district court did. It followed what Mr. Malloy had recommended. Well, how do we know that? You're opposing counsel saying, no, the district court followed the government's argument. Well, the government didn't oppose what Mr. Malloy recommended, but the motion was brought by Mr. Malloy in the district court. And so he was urging the district court to take a particular position in assessing generic conspiracy. And the district court did that. And now he's arguing that the district court erred by asking, by doing what he asked the court to do. I notice my time is almost up. I'm happy to answer any other questions the court might have. Thank you very much. Before you leave, I apologize to you. I misstated how you scored. I think I erred. But I've now corrected it so the error is harmless. Well, thank you, Your Honor. Thank you. We ask that the district court be affirmed. The case is submitted and counsel are excused. Thank you for your helpful arguments.